Thank you. Next case for argument is the U.S. Department of Justice and Facebook v. the ACLU. Ms. Brannick, you may proceed. And would you also let us know how you plan to split the time with Ms. Caroline? Yes, Your Honor. Good morning and may it please the Court. I'm Jennifer Brannick representing the Movement of Talents, ACLU of California. Of the 20 minutes allotted, I'll be taking 15 minutes and reserving five for rebuttal. And my colleague, Ms. Caroline, representing the Washington Post, will be taking five. What can the government do? That makes 25. Okay. 15. So I'll be talking for 10 minutes and reserving five. So a total of 15. Yes, I know. I'm a lawyer and there's math, but I'm pretty sure it works out. And we've got it now. I think it might have misheard you that you said 15. So that's fine. And so we'll set the clock at 10 minutes because I think it's easier for you that way. So you'll see the full amount of your time for your argument rather than moving over into Ms. Caroline's argument. Thank you, Olivia. Thank you, Judge. What can the government force a private party to do to assist in surveillance? This is a court opinion that sheds light on this important question, but the public cannot see it. Our interest in this is not idle. As the security measures that protect our online communications grow stronger in congressional hearings, public speeches, and contentious conversations with Facebook and other tech companies, the Department of Justice has told us that the current law is not strong enough and does not give it enough authority to conduct the surveillance it needs to an investigation. The public needs to know what that current law is. The public's rights of access attach to this opinion for two reasons. One, it's an opinion, and opinions are a core type of document to which the public's rights attach because it explains the law. It's the court's adjudication of rights and responsibilities between parties. And the government has not cited any cases where the right of access does not attach to an opinion or where other considerations overcome that right of access. And the second reason is because this takes place in the context of a contempt proceeding. In this court, in index newspapers held that contempt proceedings are ones where public scrutiny is particularly important because it has to do with the power of the government to dole out punishment to a private party. But in, but in, since you brought up index newspapers, in index newspapers, didn't we suggest that there is no First Amendment right to the pleadings to quash a case or contempt case? Didn't we say, isn't that what we said? Because we said certain filings related to the contempt proceedings, there was no controlling authority addressed whether the public had the right to access filings related to the contempt proceedings. So we held, we held in that instance as it related to pleadings and to, in the quash case and the contempt case, that it, there was no right that attached. We also said as to the hearing, there's no First Amendment right to these materials because there's no hard and fast, and I'm reading, tradition that contempt hearings ancillary to the grand jury investigation must be public. Instead, it appears that these have been open, whether they have been open is largely dependent on the circumstances of each case. And therefore, we didn't unseal those. So why can't we take that same rationale and apply them then to these orders? Your Honor, in index newspapers, this court held that the orders holding the witnesses in contempt and ordering him confined needed to be unsealed, and that there were... That was only because the judge in that case had done that, but, and we said that's fine. But what I'm suggesting is when we were trying to decide whether, when there was an access, a First Amendment right to access, we looked at whether there was something to suggest that it was absolutely clear. We looked at the, if you will, the tradition. We looked at what would be, and we said there is none, so we're not going to do it. Now there is none. The judge there said no. The judge in this case wrote quite the opposite. The opinion in index newspapers does not give discretion to the district court to decide whether or not to unseal orders. The court said that orders shall be unsealed in particular because contempt proceedings require public access to check the power of the government. That's not optional, and we're not asking for pleadings in this case. And certainly it's a different context because the grand jury context involves an is very broad. That is not true under the Wiretap Act. The Wiretap Act is very precise. It seals three things, applications, orders, and the content of intercepted communications. There is no broad language. Let me ask you about, I realize you're arguing at some disadvantage because you don't know what's in the orders, but in the index newspapers, the derivative for seating, which is what we're talking about here, was actually open to the public. So we don't have a parallel situation here. Is that right? I'm sorry, your honor. I couldn't hear your question because of some technical difficulties. In index newspapers, the actual proceeding was open to the public in terms of the contempt proceeding, correct? The contempt proceedings were sealed because it revealed grand jury information before the grand jury that involved witnesses and those sorts of things. So all those pleadings were sealed, but this court held that the order and the information regarding extension of the punishment needed to be sealed. But here the question is, the judge has found that the information in what you seek is intricately intertwined with the whole investigative process. How do we get around that kind of a finding? So the district court did not provide any information that suggests that unsealing this opinion would interfere with this investigation. There's no citations to any affidavits or any evidence, and the district court's decision was really based on two things that are mistakes. Number one is the district court said that the that's not what the wiretap act deals. And the second thing the district court said was that if the public saw this opinion, then it would reveal information about the government's investigation that would possibly be detrimental to investigations in the future. And presumably that's because it would reveal the government's inability to conduct wiretapping on the Facebook messenger VoIP program. But we already know that. The government's already revealed that in pleadings. The government has revealed that it cannot intercept end-to-end encrypted communications over Facebook platforms. It's explained that into the court in the Barrera-Palma case, which is the indictment that stemmed from this investigation. And the government cites no cases that say that a government's capability is something that can be hidden from the public. So for example, the public may not get to know who the informant is, but the public gets to know that the government uses informant. And to the extent that there is any information... So let me ask you the concern I think expressed in what is public is that the nature of the platform and the government's access to it and the government's procedures and processes would in fact undermine investigations, that those typically are confidential as to how they go about the investigation. What is the ACLU's response to that? Well, first, Your Honor, the government bears the burden of proof on that issue. And there do not appear to be any citations from the district court or that we can see in our part of the record to affidavits that would provide evidence of that claim. Second, as I said, there is no information that's not in the public record already that we don't know regarding the future investigative capabilities. And there are no... So let me say, if it's already in the public record, obviously you can report on it or it can be reported on, you just want confirmation that it's also in this record. Is that right? No, Your Honor. I think there's already information in the public record about the government's inability to conduct wiretapping on these types of platforms and particularly Facebook and particularly in this investigation. That's already publicly known. What is not publicly known is the court's reasoning, the law behind why Facebook did not have to comply with the government's demand in this case. We don't know. Let me ask you this since I see your time is running short with regard to balancing the public interest, which I agree with you are fairly substantial in a situation like this involving new emerging technologies, why can't we at this point tip the balance in favor of the government when it comes to ongoing investigations? Isn't there an opportunity then later on to address those concerns regarding public interest that you're talking about once the investigation is concluded? No, Your Honor. First of all, we already know that the government has stated that it has hobbled in investigations involving Facebook Messenger and other end-to-end encrypted platforms. The public already knows that and it's something that the government stated in this particular investigation. Second, there are no cases that say that the government is entitled to keep an investigative capability secret. In fact, there is a robust democratic need for people to know what the government's capabilities are in investigations, novel or otherwise. When it comes to ongoing investigations where targets might actually be able to evade the investigation if methods were revealed, that's a concern as well. It doesn't. Yes, Your Honor, I agree. Certainly, to the extent that the opinion contains that information, it can be redacted. You have the benefit of having seen the opinion. We haven't seen it, but there is substantial information in the public record now about this investigation. The case has been going on. There was an indictment of many people, the Barrera-Palma case. The case has been being litigated for over a year and a half now. There are multiple pleadings in that case. This investigation is something that is a matter of public record. Anybody who was colluding with or conspiring with these defendants already knows that there was an investigation and that these people have been indicted and what the claims are against them. Thank you. Thank you. Ms. Carolyn? Thank you, Your Honor. If it pleases the court, Duffy Carolyn of Jassy Vick Carolyn for the Washington Post. The public and other courts need to see and understand the limitations of the government's police powers under the Wiretap Act. On the First Amendment right of access issue and common law right of access issue, even though the underlying proceeding may justifiably be closed, the court's focus is on whether the ancillary proceeding is attenuated from the underlying investigation, both in context and in time. And here, the issues that are being addressed by this type of proceeding across jurisdictions is whether or not the service provider can provide the technical assistance with a minimum of interference with its service under a wiretap statute. Those issues do not involve the part of the government's investigation. They don't involve the probable cause for the initial surveillance order. They are attenuated in content from the underlying investigation. And we know it's also attenuated in time because at the time we brought our motion to seal, the cases were charged and subsequently indicted. So they are both attenuated in content and in time. And much like in index newspapers, it's like the continued confinement proceedings in the sense that the issues that normally would arise in that proceeding are less likely to focus on the underlying investigation. Let me address a few things on the court's order. It is both, in our view, procedurally and substantively defective. It's procedurally defective because while the court identifies an ongoing investigation, it in no way explains how disclosure would cause a substantial probability of harm to that interest, which is a requirement under Press Enterprise 2 and in this court's jurisprudence. It's also substantively defective because you can look at the government's opposition, which we now have after the briefs in this case were complete. The government, looking at footnote 5 and to a lesser extent footnote 2, appears to say reserve the right to present declarations to the court justifying any redaction should the court decide to unseal. So it appears that it was not even supported by facts. And this becomes a problem. Well, just a minute, just a minute, counselor, just a minute, counselor. It seems to me that it's a de novo review on the attachment and what rights attach, whether there's a First Amendment right or the common law right. But once getting past that de novo review, when we're concluding whether the right is outweighed by the compelling government interest in shielding the law enforcement techniques, at that point, isn't my standard of review an abuse of discretion? Your Honor, the conclusions reached by the judge, which were not supported by a factual record, are conclusions that are tied. Well, answer my question. They're tied to the is because I can understand the attachment argument and I can understand I have de novo review. But once having determined there is an attachment, it seems to me like Oregon Publishing Company, Comanca, others would say, U.S. VDOE says, there's an abuse of discretion here now. It would be an abuse of discretion if there was. All right, then if there is an abuse of discretion, then at that point, don't I have to find what? Don't I have to find that there's just no absolute way that it could be correct? No, abuse of discretion standard doesn't apply here because the court's conclusions were tied to his erroneous legal decision about the scope of Title III. Well, but let's read his opinion because it seems to me that in his opinion, he says, and I read from page four, at ER4, even if the qualified right did attach, which all the rest opinion is that it doesn't, the compelling interest of the DOJ to preserve the secrecy overwhelms that qualified right and then goes on to explain that. So that is his discretionary decision. So that is, that's a conclusion and it's not supported. Well, but I didn't read all of it. You want me to take up your time by reading everything he said? Your Honor, most everything that the district court says here is an adoption of a conclusion, an argument that was not supported by the government below with a declaration. It is a conclusion that is not, that's tied to its erroneous interpretation of law. And what if it's adopted as if that were sufficient, it becomes an order that is uncontestable because we don't know the facts. And if you look at page two of the order, the judge actually recognized that by saying, I can't say more. And we understand you're hamstrung, but that is not consistent with Supreme Court's determination in press enterprise or this court's authority. It has to be a factual record. Even if that portions of that factual record could have been under seal, the court needed to explain factually why there was a harm caused to the ongoing investigation through disclosure. And that was particularly important in this case where the cases were charged and indictments returned at the time we brought our motion to unseal. The way the judge's order reads, it's conclusions that aren't supported by facts. It becomes uncontestable and we think unreviewable and should be reversed on that basis alone. Thank you. Thank you. We'll now hear from the government. Good morning, Your Honor. Can all members of the court hear me? Yes. Yes. Thank you very much. Scott Meisler on behalf of the Department of Justice. Your Honor, the parties to this appeal have some disagreement about the scope of the sealing provisions in the Wiretap Act, but I think from the briefing and argument I've heard today, we don't disagree on what we believe is the most important piece of the statute and the context of this case, which is that these contempt proceedings, as reported, arise from a proceeding that is itself sealed by statute and has never been open to the public. Title III starts with the filing of an ex parte sealed application. If the court grants wiretap authorization, it does so in an order that is also sealed by statute and that may compel a third party's technical assistance to the government. And those materials are docketed, Your Honor, in a way that to our knowledge has never been open to the public and has been sealed in every district court in this country for many years. And so we think like index newspapers, that starts us off with a serious history of confidentiality expressing Congress's intent that these proceedings be treated with the kind of cut to the chase because we're quite clear with the cases, we're familiar with the very important concerns the government has in terms of compromising its investigations. What concerns me is the opinion, which would reveal, for example, legal analysis. And to the details of the government investigation or even the hindrances it might have in terms of the Facebook platform, I have some trouble understanding why that should not be made public. Well, I think, Your Honor, if you work backwards in that way and the court were to reach a conclusion that a right of access attaches under the common law or the First Amendment in determining that the order is kind of non-separable, that you can't separate out legal analysis from other information, then the court, I think, would order disclosure of a redacted version of the opinion. But what we would urge is that the court start with the threshold question of whether a right of access attaches in the first place and not kind of reverse engineer dissemination of an opinion because in this particular instance, the court determines that some piece of it may be made public without harming government interests. I think you still have to find a right of access. I understand that concern, but let me go back. Even if we say that, of course, the investigation, the request for wiretap, all of that, the docket sheet, for example, none of those are typically revealed. If you get to the opinion part of it, it seems to me we're kind of in a comparable situation we are with a lot of the national security cases we have where there are details in those cases that are not revealed, but there are aspects of the opinion, which typically would be a public opinion in a contempt proceeding here, for example, that would be revealed. So I don't think that's reverse engineering as you're putting it. I think it's starting at the beginning and ending up at the end, which is the opinion. So why isn't the opinion itself in the contempt proceeding different from, for example, the docket sheet and some of the other documents? Well, I think that's because at least in the First Amendment context, to start with the First Amendment first, I think in that context, you look to the right of access attaching to the proceeding. You start with the proceeding and not with the kind of document. You kind of move from the higher level proceeding to the opinion. And so if the court were to look there, I don't think we have a right of access attaching to the contempt proceeding ancillary to an otherwise sealed matter that arises at the investigative stage of a case, at the evidence gathering of a case. Because in that case, we drew a distinction between the motion and the court's order. And as to the court's order in that case, we said that the conclusion that we reached is different. And this is the order holding Duran in contempt and ordering him confined. And so I'll just read you a sentence from that opinion. Logic dictates that at least some of the filings related to contempt hearings, ancillary to grand jury investigations, may be open to the public because of the hearings similarities to criminal trials. And then we talked about the test, the logic test, the public access plays a significant positive role in the functioning of the portion of the proceeding. So that's not a reverse engineering. That is starting with the application of the logic test and drawing a follows that the order of contempt and confinement should be accessible. So to the extent that there's information from the grand jury proceedings that may be inadvertently disclosed, and that may appropriately be redacted. So how does that analysis not apply to the order in this particular case or the opinion? So I think I want to draw two distinctions there, Your Honor. First, I want to draw a significant part on the fact that the court, the contempt findings were made in open court pursuant to a procedure required by the Supreme Court's due process precedents, and that they concern a witness's confinement. And I know that the ACLU has responded, well, it can't, the right of access shouldn't turn on whether someone is, the government wins the proceeding or loses the proceeding, whether the court finds the witness's refusal to testify well taken or not well taken. But I do think that's what the Supreme Court's cases hold. And I do think, I read in this newspaper as having turned a significant part on the due process aspects of it, which is to say that the district court there at the contempt witnesses request demand invocation of his due process rights opened the proceeding just for the limited purpose of finding the witness in contempt and ordering him confined. And if your Honor looks at the very first sentence of the opinion in this newspapers and the repeated references to confinement throughout, I think it's very hard to separate this court's determination from the fact that confinement in order of utmost seriousness, a matter of utmost seriousness was being ordered there and was against the backdrop of due process precedents. And secondly, your Honor, I think that index newspapers conducted the, you've referred to the logic piece of the analysis, but of course the court started with history prong of the experience and logic tests. I do want to mention that historically here, even in the narrow category of technical assistance litigation, we're not talking about kind of an ambiguous history or as Judge Smith read from the opinion, no hard and fast rule. I think we're dealing here, your Honor, with an unambiguous history of sealing technical assistance litigation. The court is familiar with the in-rate company decision from 2003 cited in both parties briefs where the district court docket was sealed for years after this court issued its opinion, even though this court eventually issued a published opinion, it did so after hearing in-camera oral argument on the basis of sealed briefing and pre-circulating a draft of its opinion to make sure sensitivities weren't revealed. And I want to mention at least one more example if I can quickly. It's not emphasized or cited in our brief, but in footnote eight of the in-rate company, this court cited to the very first piece of technical assistance litigation ever under the Wiretap Act, a decision of this court from 1970 called in-rate application of the U.S. And if you look at this court's opinion in in-rate application of the U.S., it again notes that the district court briefing was sealed pursuant to a protective order, the district court held in-camera argument, the briefs were sealed in this court, and this court held in-camera oral argument. So I think if we're talking, Judge Nguyen, to get back to your point about distinctions between index newspapers in this case, the history is different because we're talking about an unbroken history against access here. And then again, I want to emphasize that we believe that the court's decision there releasing the contempt order was indicative and reflective of the fact that the contempt order had been entered orally at a piece of the proceedings that was open to the public at the contempt witness's request. And so I do think the court can limit... I agree with you, counsel, that experience really favors the government, well in part because this is new technology that's evolving that we're talking about here, but the logic test I think presents a much more difficult analysis. How do you respond to the ACU's argument that this investigation now is, at least portions of it, are a matter of public record, so that really mitigates some of the concerns of compromising ongoing investigations that was raised by the government? That may be true to some extent, Your Honor. We've cited a line of cases in our brief indicating that even if certain portions of sensitive materials are revealed in public government filings officially acknowledged by the government, then if significantly more information that's sensitive would come out by disclosing additional materials, the court should take that into account and recognize it as a compelling government interest. And I realize, once again, that the move-ins are disadvantaged here, but the court is familiar with certain ex parte portions of our brief, and I'd point the court to the sealed footnote 13, that do refer explicitly to concerns beyond just the VOIP, the Voice Over Internet footnote that Ms. Kranich referenced earlier. That, again, is one sentence in one footnote in a 80-page or so criminal complaint. So we don't think that revealing that slice of puzzle would justify wholesale disclosure of other means of labor. The point here about sealed materials, I don't mean to make reference to them extensively, but I note that Ms. Carlin was quite critical of the district court. We do presume district courts know the law. I think Judge O'Neill here was aware of the scope of sealed materials before him. He was not just taking a proffer in a pleading at face value. He relied on information to which he was privy. And I think he wrote an opinion that, while perhaps not the longest treaties on right of access, really tried to find the move-ins and appellants a basis and understanding of why he was denying the motion without revealing the information that he believed was properly sealed and not subject to a right of access. So I hope that worked. Talking on two different levels here, and I agree with you that he had an extensive record and that he carefully looked at it. But I go back to my question, and this really goes in the logic prong, in terms of legal analysis that may not necessarily reveal any of these underlying factual issues. Why, under logic analysis, is that kind of an opinion sealed? Well, I think, Your Honor, if the court's question is whether an opinion could be written, or courts have written opinions in ways that would reveal- No, no. Let me stop you. It's not could it be written. I'm talking about this case and this opinion. If it were determined, as the ACLU suggests, and I have some sympathy for both the Post and the ACLU, of the public right of access to understanding the rationale of what occurred here, if that could be revealed without compromising any of the underlying investigation or the investigative tools, why isn't there a public right of access to that part of the opinion? Well, because I think, Your Honor, it's still derivative of the nature of the proceeding, the class of proceedings as a whole. I guess the way I put it is this way. If you're looking at the right of access, you don't jump first to the document. If the court were to go in that direction, I would agree- I'm sorry. You broke off for a second, so I didn't hear that last answer. If the court, if you would start there, because for some reason we're getting a little bit interrupted on your presentation. So if you could start where you were saying that. I apologize, Your Honor. Mr. Garrard warned me about that earlier, and I hope it's not popping back up. We don't believe that you go straight to the type of document. If the court were to conclude that the public right of access attached to the opinion, I would think it would be for the reasons that Judge Nguyen indicated earlier, that you would start with the nature of the proceeding and conclude, as Judge Smith mentioned, that certain swaths of material, certain pleadings and documents and submissions and docket sheets are not subject to the right of access, but that history experience logic is different as to orders and contempt cases. Again, we don't read index newspapers that way, to be very clear about it, but if the court were to read it differently along the lines of what Judge Nguyen suggested earlier, that's something we try to explain in our brief, Your Honor. We don't believe that even the opinions of very strong language about the importance of publicizing judicial opinions, we don't read those as fully untethered to the nature of the proceedings. The appellants have cited a Fourth Circuit case, for example, in the summary judgment context, and we read the court there as saying that the right of access to the opinion goes hand in hand with the other pieces and the other openness of the proceeding. So that's what we would urge, I guess, is that if the court was to do the category of judicial opinions as separate and distinct, because I think even within that category, Your Honor, you're going to have a spectrum from, on the one hand, the Supreme Court's decisions, which are announced authoritative constructions of the Constitution and of federal statutes, and decisions of the Foreign Intelligence Surveillance Court. So Ms. Granik mentioned earlier that we've cited no cases identifying or refusing to recognize the right of access to opinions. We think that's one area, and I realize they've cited statutes suggesting Congress wants more openness there, but that's by statute. It's not by... Even in the realm of opinions, Your Honor, you have a spectrum from Supreme Court decisions fully open to non-open courts, non-open proceedings in Article III courts on specialized matters. One thing I also wanted to make sure I mentioned in response also to something Judge Nguyen had mentioned, which is the durational aspect of this. If the court affirms, it does not necessarily mean that these materials would stay sealed forever. We don't read Judge O'Neill's opinion as having decided that matter. Of course, he did cite the government's ongoing investigation as one consideration that weighed on him at the second phase of the right of access analysis. But again, we think that indexed newspapers there is highly instructive to this court, and we would direct the court in particular to footnotes 8 and 12 of indexed newspaper, where even as the court narrows into the content of the grand jury materials while an ongoing investigation continues, the court made clear, we think, in those footnotes, that ongoing investigation subsumed and included prosecutions that arise from their grand jury investigation and by analogy here, the underlying Title III proceedings. And so Ms. Kranick has alluded to one public case. I can tell the court that that's not necessarily the only charge case to which these materials relate, and the government does have ongoing investigations specific to this district. This is not just a situation, as some of the public cases, in protecting these materials. There are specific investigations in this district that are related to the underlying Title III proceedings. And so we think if the court had concerns about the temporal aspect. Yes, sir. As we relate to the experience prong, I asked your opposition questions about the history of the opening of these and how that should play a part. On the other part of that, if I look at Title III itself, Title III says what will be permitted disclosure of this wiretap evidence and what the circumstances are that it should be permitted, the disclosure should be permitted. Why should I not then read Title III to say it says what it is going to deal with and because it hasn't said anything about what is not permitted, then it isn't forbidden. I think, Your Honor, you should read Title III as a whole to... Well, I do read Title III as a whole. If I read Title III as a whole and I read what Title III is documenting or what it's really talking about here, it doesn't really get down to contempt orders or documents coming from those proceedings. And so because it doesn't, should we not suggest then from the experience prong, I think the Seventh Circuit has even said that because the Title III says what is permitted, it implies what is not permitted and what can be disclosed. Right. I have two answers, Your Honor. If you concluded that we have a provision that says contempt, but I think when I say read it as a whole, I mean, don't just look at 18a sub b because I think what Title III with the neighboring provisions do as well is funnel all of most of the disclosures in Title III, I don't want to say all, but most of them toward a post-charge, post-investigation conclusion stage. And it does that not just in 2818, but in 2517 where it says how law enforcement officers can testify or how they can use the materials in other documents that may become public like search warrants or in responding to a motion to suppress. Those things all happen at the post-charge phase. Title IX governs, bars the government essentially from using this evidence unless it has been disclosed in a timely fashion to the defense. Title III also provides for inventory notice to people whose conversations are captured again at the conclusion of the investigation as in 2518.8d, I believe. And so that's what I urge the court to look at. And I think that reconciles our view, by the way, with the Second Circuit cases the Washington Post has cited. Those are all about post-charge, in some cases post-plea and termination of proceedings cases where the government wasn't a party like in the Newsday litigation in the Second Circuit. That was a defendant who pleaded guilty objecting to the disclosure of materials from the concluded case. So that's what I would say, Jeff Smith, is that I think that Title III doesn't have a specific contempt provision, but it still funnels everything away. And it does that in a way that's logical because the trial judge then controls the way these materials are disclosed publicly and funneled to the parties, to the defendants, oftentimes under a protective order as indicated in the very provision of the justice manual cited by both sides. And so if we have parallel proceedings where we have right of access litigation on one side versus criminal discovery pursuing perhaps the protective orders on the other side, I do think it interferes not just with ongoing investigations, but with the ongoing prosecution that's carried out. Thank you. Thank you. Miss Granick. Thank you. Your Honors, if you rule that this opinion should remain sealed, you will be the first court to rule that legal analysis in an opinion in a criminal case is not available to the public. If you unseal this opinion, it will join a long history of opinions interpreting the statutory provisions of the Wiretap Act, from Olmstead back in 1929 to Dada in the Supreme Court last term. There is a long history of publication of opinions that interpret the statutory provisions. The government's argument is really quite novel, and it is not accurate with regards to the Wiretap Act. It does not contain the broad language that the government suggests that anything arising from or related to an underlying application or order is sealed. And it's not even accurate with regards to technical assistance provisions. The government litigated the Apple versus FBI case seeking technical assistance under the All Writs Act in public. That was the government's choice. There is an opinion out of the Eastern District of New York and the District of Puerto Rico, which we cite on page 12 of our reply brief. Again, cases looking particularly at technical assistance. If there aren't a lot of them, it's not because the right of access doesn't attach. It's because there just hasn't been that much litigation that people know about with regards to what the government can command private parties to do in the context of this novel information. What about the district court's finding, and he's got access to everything, of this inextricable nature in this particular case? So I appreciate your comments on some of the other cases, but every case has to be looked at on its own fact. And here the district court is saying this is all we can reveal because everything is inextricably intertwined. How would this court overcome such a finding? Your Honor, first, that would be extraordinary if true. And second, this court has the option of redactions. But I think that the problem is that the district court was infected by its misapplication of the sealing provisions of the Act. And we have evidence of that in the record. After this appeal was filed, the government moved to unseal a brief below. It's docket number 40 below. This brief was sealed by the district court at the government's request. But now that we have it on the public record, we can see that the vast majority of it is legal opinion that's perfectly safe and important for the public to know. There are some redactions, yes, but the fact that the district court thought that was appropriate to seal and that the district court did not follow the local rules, which prefer that sealing orders and the reasons for sealing be on the public docket, shows that the district court was misapplying the law. And that's why this court should exercise de novo review and not show deference to that court's factual findings. The other thing is that that court did not reference anything about this particular case. The district court's opinion talked about all future investigations. So when Mr. Meisler says, don't worry, there'll be a point sometime in the future when these investigations are all over where the opinion can be unsealed, that is not what the district court said. The district court said that this opinion, unlike any other opinion that the public knows about or that courts have ever seen, should remain sealed in perpetuity because it could interfere with all future investigations. That is not correct according to the law and that does not properly vindicate the public's rights under the First Amendment and under the common law. As I said, redactions are something that could be done if it's true that there is sensitive information in this opinion, but there's nothing special about this case. The government investigates people all the time. It conducts wiretapping all the time. Courts write opinions interpreting the Wiretap Act. And not only are those opinions published, in no Wiretap Act opinion is there even a discussion of whether the legal reasoning should or should not be sealed. The government cites only two cases saying that there's reasons that opinions should be sealed. One of them, nobody even raised a right of access. It was an issue involving attorney's fees. That's the Parks case. And in the other case, Coakley, that shows courts can publish legal reasoning and still keep information that might be of risk to witnesses or something like that redacted and sealed. So there really is something out of the ordinary here to suggest that the public doesn't have any right of access to any opinions, any legal reasoning interpreting the Wiretap Act merely because the underlying applications and orders need to be sealed in order to protect investigations prior to a indictment. Thank you. Thank you, Your Honor. I'd like to thank all counsel for your argument. Also the very excellent briefing, also briefing by multiple amici. The case of United States versus Department, United States Department of Justice and Facebook versus American Civil Liberties Union Foundation is now submitted and we're adjourned. Thank you. Thank you. This court for this session stands adjourned.
judges: McKeown, N.R. Smith, Nguyen